LMH

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Anant Kumar Tripati, | ) | No. CV 03-1122-PHX-DGC (DKD) |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Charlette Thompson, et al., | ) ) | |
| Defendants. | ) ) ) | |

This state prisoner action was filed pursuant to the Racketeer Influenced and Corrupt Organizations Act. The Court will dismiss Plaintiff's Second Amended Complaint and deny all pending motions.

**A.  Procedural Background.**

Plaintiff Anant Kumar Tripati, a state prisoner, has a lengthy history of vexatious litigation in the state and federal courts. In this Court, he has garnered more than three strikes under 28 U.S.C. § 1915(g), the provision which prohibits inmates from proceeding *in forma pauperis* when three or more of their prior actions have been dismissed as frivolous, malicious, or for failure to state a claim.[1] The Supreme Court of the United States

---

[1] See Tripati v. Felix, CV 05-762-PHX-DGC (DKD) (D. Ariz.) (Oct. 13, 2005 Ord.& J. dismissing for failure to state a claim); Tripati v. Schriro, No CV 04-2228-PHX-DGC (DKD) (D. Ariz.) (July 20, 2005 Ord. & J. dismissing for failure to state a claim); Tripati v. Currier, No CV 00-2051-PHX-ROS (MS) (D. Ariz.) (Dec. 13, 2000 Order & J. dismissing for failure to

has also recognized Plaintiff's vexatious behavior.[2] His abusive techniques in the state courts of Arizona are reflected more fully in the discussion below.

This action was originally filed as a "Complaint for Federal Racketeering" in state court and removed by Defendant Charlette Thompson. Plaintiff named thirty-three defendants and many more unknown persons, claiming that there was an enterprise among the Arizona Department of Corrections (ADOC), Arizona Department of Administration (ADOA) and the Office of the Arizona Attorney General (OAG) to interfere in judicial proceedings. The Court denied Plaintiff's request for remand and dismissed the original Complaint because Plaintiff failed to allege an injury in his business or property under RICO. See Dkt. ##2, 6-10, 12, 17.

Plaintiff filed his First Amended Complaint. See Dkt. #19. The Court dismissed it for failing to satisfy pleading standards under Rule 8 of the Federal Rules of Civil Procedure. See Dkt. #26. The Court noted that the First Amended Complaint was "53 pages long, with an additional 237 pages of attachments," and the claims were "not concise and direct." Id. at p. 2. Plaintiff also failed to use the requisite court-approved form. Id. at p. 3.

Plaintiff then filed a Second Amended Complaint on the court-approved form. See Dkt. #28. Plaintiff named forty-four Defendants and fifty "John Does" of the discovery unit of the ADOC. The named Defendants included four superior court judges, numerous assistant attorneys general of OAG, and employees of the ADOC and ADOA. The Court found that although the facts supporting some of the causes of action were not entirely clear, service would be permitted but Defendants would not be prevented from filing

---

state a claim); Tripati v. Maricopa County, No. CV 97-0021-PHX-ROS (BGS) (D. Ariz.) (May 22, 1997 Ord. & J. dismissing for failure to state a claim).

[2] See Tripati v. Schriro, 541 U.S. 1039 (2004) ("As petitioner has repeatedly abused this Court's process, the Clerk is directed not to accept any further petitions in noncriminal matters from petitioner unless the docketing fee required by Rule 38(a) is paid and petition submitted in compliance with Rule 33.1.")

1 dispositive motions. See Dkt. #33 at p. 3. The Court also expressly did not consider
2 whether Plaintiff had raised the same claims in other lawsuits. Id.

3 A flurry of motions ensued. Some motions have been resolved. See Dkt. #85
4 resolving Dkt. #79, #84; Dkt. #87 resolving Dkt. #86. Many motions are still pending.
5 Plaintiff filed a motion seeking addresses for service and to dismiss certain Defendants
6 (Dkt. #34), a motion to extend time for service (Dkt. #39), and a motion to disqualify the
7 attorney general (Dkt. #70). Defendants filed a motion and amended motion to vacate part
8 of the screening order (Dkt. #73, #75) and to dismiss the action (Dkt. #74). Plaintiff
9 responded to the amended motion to vacate (Dkt. #77) and Defendants replied (Dkt. #76).
10 Plaintiff then moved to strike the reply (Dkt. #78) and Defendants responded to that motion
11 (Dkt. #82). Plaintiff also responded to the motion to dismiss (Dkt. #83). Defendants replied
12 (Dkt. #88) and sought to strike exhibits to Plaintiff's response (Dkt. #89). Plaintiff
13 responded to the motion to strike (Dkt. #90), and Defendants replied (Dkt. #91).

14 **B.   Screening.**

15 The Prison Litigation Reform Act requires the Court to *sua sponte* screen a prisoner
16 action. Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (*en banc*). The Court must
17 dismiss a complaint or portion thereof if Plaintiff has raised claims that are legally
18 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that
19 seek monetary relief from a defendant who is immune from such relief. 28 U.S.C.
20 § 1915A(b)(1),(2); see also Lopez, 203 F.3d 1122 at 1127-29 (requiring an opportunity to
21 amend only when the complaint "could possibly be saved").

22 In determining whether the allegations of a Complaint state a claim upon which relief
23 may be granted, the Court must take the allegations of material fact as true and construe
24 them in the light most favorable to the plaintiff. Barnett v. Centoni, 31 F.3d 813, 816 (9th
25 Cir. 1994) (*per curiam*). The court need not accept as true allegations that contradict
26 matters properly subject to judicial notice, nor allegations that are merely conclusory,
27 unwarranted deductions of fact, or unreasonable inferences. Sprewell v. Golden State
28

1 Warriors, 266 F.3d 979, 988 (9th Cir.), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001).

The Court has *sua sponte* reexamined the Second Amended Complaint under these screening standards. In particular, the Court has now had the opportunity to take judicial notice of state court records which are contradictory to Plaintiff's allegations. Because the Court finds that Plaintiff's action fails to state a claim, the Court will vacate its earlier Order requiring service and dismiss the action.

**C.    Second Amended Complaint.**

Plaintiff sets forth thirteen counts in his Second Amended Complaint which may be divided into the following categories: (1) three counts of denial of access to the courts (Counts IV, VI, and IX), (2) RICO-related allegations (Counts I-III, X-XII), and (3) retaliation (Count XIII).

*1. Access to Courts (Count IV)*

In Count IV, Plaintiff alleges that documents he submitted in support of Rule 59/60 motions were destroyed by Maricopa Superior Court Judge Edward Burke. (Sec. Am. Compl. at 6, ¶ 11.) Plaintiff is particularly disappointed because these documents contained numerous claims related to the destruction of documents by ADOC employees and three other superior court judges. Plaintiff alleges that Judge Burke's conduct caused Judges Fields and Donahoe to be unable to rule and caused the Arizona Court of Appeals to be unable to decide an issue. According to Plaintiff, Judge Burke acknowledged receipt of the documents in an Order issued on April 25, 2003.

Plaintiff's allegations, however, contradict matters subject to judicial notice. See Sprewell, 266 F.3d at 988. The state court record reveals quite a different course of events. First, Plaintiff fails to mention that as a vexatious litigant, he was required to seek permission from the presiding judge before filing *any* pleadings in state court. At that time, Judge Burke was the presiding judge. Judge Burke outlined this requirement in an October

21, 2002, order denying Plaintiff's request to file a complaint. In that Order, Judge Burke set forth a procedural history which included that:

> (1) Plaintiff had filed a motion in 1996 that referred to a judge six times as an "SOB" and stated that "[the judge] would sleep with his own mother to see that Plaintiff gets no relief."
>
> (2) In 1997, a superior court judge found that Plaintiff had filed more than twenty lawsuits which were frivolous and vexatious. The clerk was ordered to decline to accept any documents for filing, and Plaintiff was required to seek leave from the presiding judge before file any papers in any case.
>
> (3) In 1995, the Arizona Court of Appeals had issued a similar order requiring its Clerk to decline to accept petitions for special action unless Plaintiff had first obtained permission.

Judge Burke found that Plaintiff had flouted the Order by filing at least six additional actions without permission and instead had "cleverly" asked for deferral of fees and failed to mention the restriction. Judge Burke required Plaintiff to submit a cover letter that outlined the restrictions imposed upon him with any future request to file a document. (See Oct. 12, 2001 Order in Tripati v. McFadden, CV 2001-11718 (Maricopa County Sup. Ct.) (attached as exhibit to Def.'s Mot. to Dismiss, Dkt. #74).

Second, Plaintiff fails to completely recount the procedural history regarding his Rule 59/60 motion that was allegedly destroyed. On February 26, 2002, Judge Burke issued an order declining to rule on Plaintiff's Rule 59 and 60 motion on the basis of lack of jurisdiction in light of a notice of appeal filed by Plaintiff. (See February 26, 2002 Order in Tripati v. McFadden, CV 2001-11718 (Maricopa County Sup. Ct.). Later, on July 5, 2002, after Plaintiff had dismissed his appeal, Judge Burke granted him permission to file his Rule 59/60 motion, which was referred to Judge Donahoe for ruling. (See July 5, 2002 Order in Tripati v. McFadden, CV 2001-11718 (Maricopa County Sup. Ct.) (attached as exhibit to Def.'s Mot. to Dismiss, Dkt. #74). The subsequent April 2003 Order by Judge Burke that is challenged by Plaintiff stated:

> On February 25, 2002, the Court issued a minute entry stating that no action would be taken on Plaintiff's motion pursuant to Rule 59 and 60 because the Court no longer had jurisdiction. *The Court has no recollection as to whether or not those motions were filed in the court file or discarded because the Court lacked jurisdiction.*

> However, the Clerk's docket reflects that on July 5, 2002, the Court granted Plaintiff's Motion to File Post Appeal Dismissal To Vacate pursuant to Rules 59 and 60 and the matter was referred to the Honorable Gary Donahoe for ruling.
>
> This Court is not in a position to review the file to determine the status or location of Plaintiff's motions because Plaintiff has appealed this case and the file is at the Arizona Court of Appeals.
> Because this Court was merely the gatekeeper for Plaintiff's pleadings and made no substantive rulings, the Court can only suggest to Plaintiff that if and when this case is returned from the Arizona Court of Appeals, that Plaintiff direct his inquiries either to Judge Donahoe or the judge assigned to this case at that time.

(See April 29, 2003 Order in Tripati v. McFadden, CV 2001-11718 (Maricopa County Sup. Ct.)(attached as exhibit to Def.'s Mot. to Dismiss, Dkt. #74) (emphasis added)).

Despite this procedural history in the state courts, Plaintiff alleges in his Second Amended Complaint:

> According to an order issued by Judge Edward Burke on July 5, [2002], he did in fact receive the documents. According to the procedure established by Judge Edward Burke, Edward Burke the Deputy Clerk was required to file the documents. However, he destroyed these documents.

(Sec. Am. Compl. at 6, ¶ 15.) In light of the state court procedural history, is it easy to see that Judge Burke did not attempt in any way to conceal that Plaintiff had sought to file motions pursuant to Rule 59/60. Plaintiff's insinuation otherwise is disingenuous. Also, Plaintiff's assertion that Judge Burke was required to file the documents is also flatly contradicted by the state court record, which reflects that Plaintiff was to first obtain permission for filing documents.

Moreover, the heart of Plaintiff's challenge is that the documents in his Rule 59 and 60 motions contained claims against other persons regarding the destruction of documents, and he was therefore unable to present these claims. This claim is obviously ludicrous considering Plaintiff's legal sophistication.

In addition, as circuitous as it may be, Plaintiff's claim is actually a challenge to Judge Burke's decision that the court lacked jurisdiction to decide the Rule 59 and 60

motions in light of a pending appeal. Hence, Plaintiff's claim is an impermissible collateral attack.

> It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has had his day in court . . . a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first.

Durfee v. Duke, 375 U.S. 106, 113-113 (1963) (citing Stoll v. Gottlieb, 305 U.S. 165, 172 (1938)). "It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected . . . ." Walker v. City of Birmingham, 388 U.S. 307, 314 (1967) (citing Howat v. State of Kansas, 258 U.S. 181, 189 (1922)). Accordingly, Plaintiff's recourse was to challenge Judge Burke's decision that he lacked jurisdiction to rule on his claims under Rule 59/60. Instead, Plaintiff dismissed his appeal and was granted permission to file a new motion. An order by the Arizona Court of Appeals reveals that he never did file the motion.[3]

In sum, Plaintiff submitted a post-judgment motion over which the court lacked jurisdiction and when he was given the opportunity to file a new motion at the procedurally proper time, he failed to do so. He instead has attempted to turn his failure to follow proper

---

[3] The Arizona Court of Appeals succinctly reviewed this procedural history:

Tripati originally submitted motions pursuant to Rule 59 and Rule 60 on February 19, 2002, which the trial court denied for lack of jurisdiction because he had already filed a notice of appeal to this court. Consequently, Tripati moved this court to dismiss his appeal in order to permit him to again submit his post-judgment motions to the trial court. On May 22, 2002, this court granted the motion and dismissed the appeal without prejudice. Subsequently, then new civil presiding judge in the trial court granted Tripati permission pursuant to the screening order to file his Rule 59 and 60 motions. **However, Tripati never did so.**

See Tripati v. McFadden, No. 1 CA-CV 03-138 (Ariz. Ct. App.) (Oct. 2, 2003 Mem. Decision at pp. 6-7) (copy attached as Ex. 36 to Pl.'s Resp. to Mot. to Dismiss, Dkt. #83) (emphasis added).

1 procedure into a civil rights claim for denial of access to the courts. Plaintiff fails to state
2 a claim.

3   *2. Access to courts (Counts VI).*

4 In Count VI, Plaintiff alleges that "Defendants Stewart, Schneider, Hills, Bayless, Burns, each and every member of the Attorney General's Office have approved the 'custom and tradition of withholding, fabricating, destroying evidence adverse to them and favorable to inmates' in cases where inmates are litigants." (Sec. Am. Compl. at 6(f)). Plaintiff then asserts that he lost claims in CV 99-20757, CV 01-11718, CV 02-15875, and CV 02-11710. Again, these are conclusory allegations asserted by a disappointed litigant. There are no specific factual allegations about the conduct of any of these Defendants. Plaintiff also has not alleged that he had a nonfrivolous civil rights claim. See Lewis v. Casey, 518 U.S. 343, 351-53 (1996). He therefore fails to state a claim.

13   *3. Access to courts (Counts IX).*

14 In Count IX, Plaintiff alleges that Defendant Marla Currier, an ADOC employee, destroyed eighty pages of exonerating documents that were given to her for copying, and that as a result, Plaintiff lost a federal habeas action. This claim is also an impermissible collateral attack. An access to courts claim based on the loss of eighty pages and a tape was rejected by the Arizona Court of Appeals. See Tripati v. State of Arizona, No 1 CA-CV 02-343 (Ariz. Ct. App.) (Feb. 20, 2003 Mem. Decision at p. 11) (copy attached to Pl.'s Resp. to Motion to Dismiss, Ex. 37, Dkt. #83). Plaintiff's recourse was to appeal that decision, not to bring a new action in federal court. For this reason alone, Plaintiff's claim fails.

22 Also in Count IX, Plaintiff alleges that two ADOC employees lost or misplaced an exonerating tape that caused him to lose his habeas action. The allegation is too ambiguous to determine whether this claim might also be a collateral attack. Even if it is not, the claim fails. The right of meaningful access to the courts prohibits state officials from actively interfering with inmates' attempts to prepare or file legal documents. Lewis, 518 U.S. at 350. Injuries to life, liberty, or property that are inflicted by governmental negligence are not addressed by the United States Constitution. Daniels v. Williams, 474

U.S. 327, 333 (1986). An allegation that employees lost or misplaced a tape shows negligence and not active interference with Plaintiff's attempts to file legal documents. Moreover, Plaintiff has failed to connect this part of Count IX to any of the named Defendants. Consequently, he fails to state a claim.

*4. RICO-related allegations.*

Plaintiff's RICO claims are based on other lawsuits he has filed. He lists these actions as follows: CV 99-20757, CV 01-11718, CV 02-1584, CV 02-11710 and CV 02-0887. (Sec. Am. Compl. at 4(b), ¶ 6d.)[4] Plaintiff blanketly alleges that three superior court judges destroyed evidence, that a fourth judge destroyed documents, and that ADOC and ADOA employees are members of an "ADOC enterprise." (Sec. Am. Compl. at 2-2(c).) The purpose of this enterprise, according to Plaintiff, is to interfere with judicial process in which he is a litigant by fabricating and destroying evidence.

The Court need not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. Sprewell, 266 F.3d at 988. All of Plaintiff's RICO-related allegations are legal conclusions without factual allegations in support. For instance, Plaintiff has a list of more than thirty dates when "they" committed "predicate acts," without identifying the person or the act. See Sec. Am. Compl. at 4(b), ¶ 6b. Another example is Plaintiff's assumption that affidavits were false because he believes that the affidavits were notarized when blank and filled in later by the affiant. See Sec. Am. Compl. at 4(c)-(d), ¶¶ 7d-7f, 7h-7i, 7k-7l. Plaintiff's allegations more reasonably support the inference that he is a disappointed litigant than the inference that Defendants

---

[4] Plaintiff has not provided anything other than case numbers. The Court takes judicial notice of the following official records of the Maricopa County Superior Court: (1) Tripati v. State of Arizona, CV 1999-20757 (Maricopa County Sup. Ct.); (2) Tripati v. McFadden, CV 01-11718 (Maricopa County Sup. Ct.); (3) Tripati v. Baca, CV 02-1584 (Maricopa County Sup. Ct.); and (4) Tripati v. Forwith, CV 02-14710 (Maricopa County Sup. Ct.). Plaintiff listed CV 02-1**1**710, which appears to be a typo for CV 02-1**4**710. Also, CV 02-0887 appears to refer to a federal civil rights action, Tripati v. Palmer, No. CV 02-0887-PHX-NVW (D. Ariz.).

1 had some sort of enterprise to interfere with five lawsuits. Because these types of
2 allegations are conclusory, the Court finds that they fail to state a claim.

3 *5. Retaliation (Count XIII).*

4 A viable retaliation claim contains five basic elements: (1) an assertion that a state
5 actor took some adverse action against an inmate (2) because of (3) that prisoner's
6 protected conduct and that such action (4) chilled the inmate's exercise of his First
7 Amendment rights (or that the inmate suffered more than minimal harm) and (5) was not
8 narrowly tailored to advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d
9 559, 567-58 (9th Cir. 2005). In Count XIII, Plaintiff alleges that all of the Defendants have
10 retaliated against him by harassing and intimidating him for exercising his right to challenge
11 their misconduct. This allegation is overbroad and conclusory, particularly considering
12 the number of Defendants. The Court need not accept as true allegations that are merely
13 conclusory, unwarranted deductions of fact, or unreasonable inferences. Sprewell, 266
14 F.3d at 988. This claim therefore fails.

15 *6. Remaining Counts.*

16 Each of the remaining counts (Count V for denial of substantive due process, Count
17 VII for redress of grievances, Count VIII for failure to intercede against all defendants, and
18 Count X for extrinsic fraud) is factually dependent on one or more of the foregoing counts
19 that have been dismissed for failure to state a claim. Consequently, these additional
20 counts fail as well.

21 **D.    Judicial Immunity.**

22 In addition to the foregoing, the superior court judges possess immunity. Judges
23 are immune except when the acts are *not* taken in their judicial capacity or are taken in
24 absence of all jurisdiction. Harvey v. Waldron, 210 F.3d 1008, 1012 (9th Cir. 2000).
25 Immunity attaches even if the act was erroneous or injurious, and irrespective of the
26 judge's motivation. Id. (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).
27 Although Plaintiff has attempted to craft his allegations to say that the judges acted
28 outside of their judicial capacity, his disingenuous allegations are too unreasonable to be

1 taken as true. As stated in the foregoing, the only factual allegation concerns a ruling by
2 Judge Burke on a Rule 59/60 motion. Obviously, Judge Burke is immune for his judicial
3 decisionmaking. The allegations against the remaining judges devolve from this one act
4 by Judge Burke. Accordingly, the judges are immune.

5 **E.     Malicious.**

6 A case is malicious if it was filed with the intention to desire or harm another.
7 Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005) (quotation omitted). Plaintiff has a
8 long history of using the federal and state courts as his playground, and he has earned
9 many restrictions for his contumacious behavior. He is not merely an upset litigant who
10 misunderstands pleading standards. His allegations of judicial and governmental
11 misconduct are utterly unfounded. His twisting of facts and obscuring of actual events
12 leads this Court to conclude that this lawsuit is malicious. Thus, the Court alternately
13 dismisses this action as malicious.

14 **F.     Pending Motions.**

15 In light of the Court's determination that Plaintiff's Second Amended Complaint fails
16 to state a claim and is alternately malicious, all pending motions will be denied as moot.

17 **IT IS THEREFORE ORDERED THAT:**

18 (1) The reference to the magistrate judge is withdrawn.
19 (2) All pending motions (Dkt. ##34, 39, 70, 74, 75, 78 and 89) are **denied** as moot.
20 (3) The Order (Dkt. #33) is **vacated** only to the extent that the Order required service.
21 (4) The Second Amended Complaint and this action are **dismissed** for failure to
22 state a claim and alternately as malicious, and the Clerk of Court shall enter judgment
23 accordingly.

1  (5) The Clerk of Court shall make an entry on the docket in this matter indicating
2  that the dismissal falls within the purview of 28 U.S.C. § 1915(g).

3  DATED this 27th day of December, 2005.

```
                    David G. Campbell
                    United States District Judge
```

- 12 -